**Richard A. TANNER, Appellant,**

v.

**WESTERN PUBLISHING COMPANY, Donrey Media Group, Holdenville Daily News, Jerry Quinn, Bill Hill, and John Doe, Appellees.**

No. 59232.

Court of Appeals of Oklahoma,
Division No. 4.

May 1, 1984.

Released for Publication by Order of Court of Appeals June 4, 1984.

Gordon Allen, Rodgers & Allen, Holdenville, James Wadley, Stipe, Gossett, Stipe, Harper & Estes, McAlester, for appellant.

George O. Kleier, Fort Smith, Ark., for appellees.

BRIGHTMIRE, Judge.

This is a libel action brought by the elected Chief of Police of Holdenville, Oklahoma, against a newspaper publisher and others. The trial court sustained a demurrer to plaintiff's petition after concluding it failed to state a cause of action. Plaintiff appeals. We affirm.

I

Plaintiff Richard A. Tanner filed this action against Western Publishing Company, Donrey Media Group, Holdenville Daily News, Jerry Quinn, Bill Hill, and John Doe.

In his petition plaintiff alleged that on Sunday, July 19, 1981, defendants prepared and published a 3″ × 5″ ad in the Holdenville Daily News entitled "I'm Mad Too Eddie." It reads as follows:

I'm Mad Too Eddie

After celebrating our 205th anniversary of independence, the people can to a degree, understand what our forefathers were burdened with. We are forced to live with laws that are made up with no compassion, thought or reason.

Some few years back, the Federal Supreme court declared that loitering and curfew were unconstitutional, unless martial law is called by the governor of the state. When it is declared, the law applies to all the people, not just a select few.

The citizens of Holdenville are living above the Federal and State law just because we have city fathers who overreact and an egotistical chief who's [sic] law is judge, jury and executioner.

We should all obey the laws, but lets [sic] have good laws, not illegal ones.

PAID ADVERTISEMENT

The allegation is that the "ordinary, obvious and natural meaning of [this] publication is that the Plaintiff Chief of Police for the City of Holdenville is guilty of neglect, incompetence, malfeasance, and misconduct in his official duties and office." And, continues plaintiff, the publication was libelous per se, unprivileged, untrue, and motivated by malice. It damaged plaintiff's good character, exposed him to public hatred, contempt, and ridicule, and injured him in his occupation. It was published by defendants, said plaintiff, knowing it to be false or recklessly without trying to ascertain the true facts concerning plaintiff's conduct and official duties.

The chief asked for $750,000 compensatory damages and $5,000,000 punitive.

As a foundation for his decision to sustain defendants' general demurrer to the petition, the trial court concluded: (1) subject publication does not, expressly or implicitly, accuse the plaintiff of any specific criminal wrongdoing, but consists of "rhetorical hyperbole, and uses words in a loose, figurative sense to characterize certain official actions"; and (2) to hold otherwise would have a "chilling effect" on the news media contrary to the first amendment's guarantee of press freedom.

This appeal ensued.

II

Plaintiff's contention is that the contents of the ad actionably defame him.

He begins his argument by conceding he is a public official within the purview of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), which means, of course, that plaintiff must prove not only that he was defamed, but that the publication was both false and made with actual malice; that is, the publisher knew it was false or published it with a reckless disregard of whether it was false or not. He notes, also, that because we are dealing with a ruling on a demurrer to a petition, the question of whether the publication was privileged under 12 O.S. 1981 § 1443.1, may not be considered because it is a defense available to defendants. 12 O.S.1981 § 1444.1.

The question for review as seen by plaintiff is this: "Is the subject publication purely rhetorical and composed of figurative speech so that as a matter of law, it cannot reasonably be interpreted to be a factual assertion (of the imputation of crime) ...?"

As a preface to analyzing subject publication we should point out that the petition alleges no background facts that led up to, surrounded or precipitated the ad, which might transform otherwise nondefamatory language into a defamatory status. Moreover it should be borne in mind that, in testing the sufficiency of the petition, only the well-pleaded facts and reasonable inferences emanating from them are to be considered true and the pleader's conclusions are to be ignored.

The first paragraph of the ad does not libel the plaintiff. It does not even mention him. In it the author merely commiserates with the burdens our forefathers had to bear for 205 years and takes a poke at lawmakers for enacting laws that were felt to be without "compassion, thought or reason." No specific law is mentioned, and we are not able to see in the petition any particular underlying facts that shed light on exactly what the ad composer was upset about. Certainly nothing is imputed to plaintiff.

The second paragraph appears to express the author's opinion of what the United States Supreme Court has held with regard to the constitutionality of "loitering and curfew [laws?]"; namely, that they are unconstitutional except during governor-invoked martial law. Here again we see nothing defamatory about the viewpoint expressed, particularly with regard to plaintiff, even though the language suggests that the author is complaining of laws—probably ordinances—that have to do with loitering and curfew.

In the third paragraph the author opines that the citizens of Holdenville "are living above the Federal and State law." Again, to give any meaning at all to this vague generalization, we have to assume the author is referring to some presumed unconstitutional loitering and curfew laws. The reason given for the conclusion—that the citizenry is living above the law—is that the city fathers "overreact" and the town has "an egotistical chief who's [*sic* ] law is judge, jury and executioner." We assume the author's use of the phrase "living above the law" is intended to convey the idea of ignoring the law. If so, then the author is expressing the view that the citizens of Holdenville are ignoring the law promulgated by the "Federal Supreme court" pertaining to loitering and curfew—as a result of overreacting city officials and an "egotistical chief" who is enforcing "law" that is "judge, jury and executioner."

The lack of grammatical sense in the clause mentioning the chief makes it very difficult, if not impossible, to understand just what act or omission the author intended to attribute to the chief that caused his fellow townsmen to ignore the law. Characterizing the chief as egotistical is not defamatory, but merely a type of expletive the court in *Miskovsky v. Oklahoma Publishing Co.*, 654 P.2d 587, 594 (Okla.1982), *cert. denied*, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982), denominated "judgmental" rather than "factual"— which, said the high court, "cannot form the basis of a libel action, as [such adjectives] cannot be verified as true or false." The last clause in the sentence refers to

law in general as being "judge, jury and executioner." Like the rest of the composition, this phrase is meaningless unless accepted in a figurative sense—as hyperbolic rhetoric. Had the ad said that in enforcing the law the chief acted as judge, jury and executioner, a little closer question would have been presented, but we still think such words in context of the whole article would have amounted to no more than rhetorical exaggerations depicting a tough, conceited, and perhaps overzealous cop enforcing what the author conceived to be "illegal" laws on the books, rather than one who, as plaintiff contends, was "guilty of neglect, incompetence, malfeasance, and misconduct in his official duties." In other words, the target of the ad is the existence of some supposed unconstitutional laws. The implication of the author's complaint with regard to the chief, as we read the ad, is that he is enforcing such laws too well, or at least too vigorously—a legitimate, perhaps even flattering, opinionative comment on his official acts which is not defaming.

Finally the last sentence—"We should all obey the laws, but lets [*sic*] have good laws, not illegal ones"—imputes nothing at all to plaintiff and certainly does not defame him.

### III

■ An overall appraisal of the advertisement convinces us that its writer did no more than publicly condemn some unidentified loitering and curfews laws as unconstitutional—laws which the citizens of Holdenville were having to live with because of overreactive city officials and a tough, self-centered chief who was zealously enforcing them.

To hold that a citizen cannot publicly express such an opinion concerning town affairs without exposing himself to liability for damages would have the effect of completely muzzling the electorate and stilling any voice of criticism regarding the official performance of public officials. Both state and federal constitutions forbid this.

The judgment appealed is affirmed.

DeMIER, P.J., and STUBBLEFIELD, J., concur.